AF Approval _WSTT for N.A_                    Chief Approval _WSTT for J.K.M._

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

UNITED STATES OF AMERICA

v.                                          CASE NO. 5:20-cr-29-RBD-PRL

YILENA CRESPO-RUIZ

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by

Roger B. Handberg, United States Attorney for the Middle District of Florida,

and the defendant, Yilena Crespo-Ruiz, and the attorney for the defendant,

Miguel A. Gonzalez, Esq., mutually agree as follows:

**A.    Particularized Terms**

1.    Count Pleading To

The defendant shall enter a plea of guilty to Count One of the

Indictment.  Count One charges the defendant with Unlawful Use of an

Access Device, in violation of 18 U.S.C. § 1029(a)(1).

2.    Maximum Penalties

Count One carries a maximum sentence of 10 years of

imprisonment; a fine of $250,000, or twice the gross gain caused by the

offense, or twice the gross loss caused by the offense, whichever is greater; a

term of supervised release of not more than 3 years; and a special assessment

Defendant's Initials _YCR_

of $100. With respect to certain offenses, the Court shall order the defendant

to make restitution to any victim of the offense, and with respect to other

offenses, the Court may order the defendant to make restitution to any victim

of the offense, or to the community, as set forth below.

3.     Elements of the Offense

The defendant acknowledges understanding the nature and

elements of the offense with which defendant has been charged and to which

defendant is pleading guilty. The elements of Count One are:

           First:      The Defendant knowingly used a counterfeit access device;

           Second:     The Defendant knew the access device was counterfeit, and acted with the intent to defraud or deceive; and

           Third:      The Defendant's conduct affected interstate or foreign commerce.

4.     Counts Dismissed

At the time of sentencing, the remaining count against the

defendant, Count Two, will be dismissed pursuant to Fed. R. Crim. P.

11(c)(1)(A).

5.     No Further Charges

If the Court accepts this plea agreement, the United States

Attorney's Office for the Middle District of Florida agrees not to charge

Defendant's Initials _YCR_         2

defendant with committing any other federal criminal offenses known to the

United States Attorney's Office at the time of the execution of this agreement,

related to the conduct giving rise to this plea agreement.

      6.     Mandatory Restitution to Victim of Offense of Conviction

           Pursuant to 18 U.S.C. § 3663A(a) and (b), defendant agrees to

make full restitution to C.C.

      7.     Acceptance of Responsibility - Three Levels

           At the time of sentencing, and in the event that no adverse

information is received suggesting such a recommendation to be unwarranted,

the United States will not oppose the defendant's request to the Court that the

defendant receive a two-level downward adjustment for acceptance of

responsibility, pursuant to USSG § 3E1.1(a). The defendant understands that

this recommendation or request is not binding on the Court, and if not

accepted by the Court, the defendant will not be allowed to withdraw from the

plea.

           Further, at the time of sentencing, if the defendant's offense level

prior to operation of subsection (a) is level 16 or greater, and if the defendant

complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea

Agreement, including but not limited to, the timely submission of the financial

affidavit referenced in Paragraph B.5., the United States agrees to file a motion

Defendant's Initials _*YCR*_        3

pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

8.      Low End

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will not oppose the defendant's request to the Court that the defendant receive a sentence at the low end of the applicable guideline range, as calculated by the Court. The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

9.      Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. §§ 982(a)(2)(B) and 1029(c)(1)(C), whether in

Defendant's Initials _YCR_                4

the possession or control of the United States, the defendant or defendant's nominees.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action.  The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

If the United States seeks the forfeiture of specific assets pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered.  In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing.  To that end, the

Defendant's Initials _YCR_                    5

defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant further agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Defendant's Initials _YCR_                    6

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed forfeiture amount, is collected in full.

**B.     Standard Terms and Conditions**

     1.     _Restitution, Special Assessment and Fine:_

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution

Defendant's Initials _YCR_                7

to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied. On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. To ensure that this obligation is satisfied, the Defendant agrees to deliver a cashier's check, certified check, or money order to the Clerk of the Court in the amount of $100, payable to "Clerk, U.S. District Court" within ten days of the change of plea hearing. The defendant understands that this agreement imposes no limitation as to fine.

Defendant's Initials _YCR_                    8

2.    Supervised Release

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.    Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.    Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies.  The United States further reserves its right to

Defendant's Initials _YCQ_                    9

make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

     5.   Financial Disclosures

         Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that her financial statement and disclosures will be complete, accurate and truthful and will include all assets in which she has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to

Defendant's Initials _YCR_       10

the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

      6.    <u>Sentencing Recommendations</u>

        It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make

Defendant's Initials _YCR_         11

with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

      7.    <u>Defendant's Waiver of Right to Appeal the Sentence</u>

          The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

      8.    <u>Middle District of Florida Agreement</u>

          It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this

Defendant's Initials _YCR_             12

office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

      9.    <u>Filing of Agreement</u>

      This agreement shall be presented to the Court, in open court or <u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

      10.    <u>Voluntariness</u>

      The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront

Defendant's Initials _YCR_         13

and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.   Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

Defendant's Initials _YCR_          14

12.    Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13.    Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this ___14___ day of May, 2024

ROGER B. HANDBERG
United States Attorney

_____
Yilena Crespo-Ruiz
Defendant

_____
William S. Hamilton
Assistant United States Attorney

_____
Miguel A. Gonzalez, Esq.
Attorney for Defendant

_____
Robert E. Bodnar, Jr.
Assistant United States Attorney
Chief, Ocala Division

Defendant's Initials ___YCR___                    15

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 5:20-cr-29-RBD-PRL

YILENA CRESPO-RUIZ

PERSONALIZATION OF ELEMENTS

COUNT ONE

First:       Do you admit that, on or about February 16, 2019, in the

             Middle District of Florida, you knowingly used a

             counterfeit access device, to wit: a credit card that had

             been encoded with the account information of an

             individual named C.C.?

Second:      Do you admit that you knew the access device was

             counterfeit, and acted with the intent to defraud or deceive

             by using it to purchase fuel?

Third:       Do you admit that your conduct affected interstate and

             foreign commerce?

Defendant's Initials _YCR_                    16

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

UNITED STATES OF AMERICA

v.                                              CASE NO. 5:20-cr-29-RBD-PRL

YILENA CRESPO-RUIZ

### FACTUAL BASIS

On February 16, 2019, Sumter County Sheriff's Office (SCSO) Deputy

Charles Smith was monitoring a gas station located on East State Road 44 in

Wildwood, Florida.  This business is frequently monitored by SCSO deputies

because its position on a high-traffic route makes it a frequent target for credit

card-based identity theft and fraudulent fuel purchases.  While monitoring the

gas station at 5:07pm, the deputy observed Yilena Crespo-Ruiz pumping a

large amount of diesel fuel into a white Ford van.

The deputy watched as Crespo-Ruiz completed one fuel transaction,

hung up the diesel pump, inserted another card into the pump's card reader,

and began another diesel fuel transaction.  This behavior is common in

incidences of diesel fuel theft using fraudulent credit cards.  The deputy

entered the gas station and spoke to the manager on duty about Crespo-Ruiz's

fuel purchases. The manager stated that Crespo-Ruiz had completed one

purchase of exactly $100 worth of fuel (32.268 gallons of diesel) using a

Defendant's Initials _YCR_                    17

MasterCard with the last four digits ending in 0325. The manager also advised

that Crespo-Ruiz had recently begun a second transaction using the same

MasterCard, and that the transaction was still in progress. This behavior is

also common in fuel theft cases, as perpetrators will often use multiple

fraudulent credit cards (sometimes including multiple cards encoded with the

same account information) to conduct multiple transactions of $100 or more,

since their vehicles are often illegally modified to hold far more fuel than

normal.

  The deputy approached Crespo-Ruiz at the pump without activating the

lights or sirens on his patrol vehicle or blocking her van. As the deputy

approached, Crespo-Ruiz attempted to walk away, leaving her vehicle running

and unattended. The deputy asked Crespo-Ruiz in English and Spanish how

she paid for the fuel for her vehicle. Crespo-Ruiz replied that she paid with a

card and handed the deputy a MasterCard bearing her name and an account

number ending in 1750. This MasterCard was different from the card ending

in 0325 used for both of Crespo-Ruiz's previous transactions. The deputy then

returned inside the gas station and retrieved the receipts for the MasterCard

transactions ending in 0325.

  Upon returning to Crespo-Ruiz, the deputy asked for consent to search

her van in both English and Spanish. Crespo-Ruiz gave verbal consent to the

Defendant's Initials _YCR_   18

search.  Inside the center console of Crespo-Ruiz's van, the deputy observed two credit cards with five-digit ZIP codes written on them in black magic marker. This is common on credit cards which have been fraudulently re-encoded with stolen account numbers; since the fraudulent user of the credit card is not the actual account holder, they are unlikely to know the associated ZIP code offhand and must write it down to use the card.

While inspecting the cargo area of the van, the deputy saw a large metal liquid transfer container with an attached rubber hose and diesel nozzle. Beneath the diesel hose was an electronic recorder that kept track of how many gallons the transfer container had dispensed. A large amount of diesel fuel covered the floorboards of the cargo compartment—it appeared that the fuel had leaked from the container.

SCSO Detective Jeffrey Cohen arrived at the gas station as Crespo-Ruiz's vehicle was searched.  After running the recovered credit cards through a card reader, the detective realized that the cards contained fraudulent account information and that the names on the cards did not match the names associated with the encoded account information.   SCSO arrested Crespo-Ruiz on state charges of credit card fraud and unlawful conveyance of fuel. The detective conducted an inventory search of Crespo-Ruiz's van before it was towed from the scene and discovered two bundles of similar cards

Defendant's Initials _YCR_                19

(totaling 29) inside Crespo-Ruiz's purse. The detective scanned the cards with his card reader and confirmed that all the cards recovered from Crespo-Ruiz were re-encoded with credit card information from accounts not belonging to Crespo-Ruiz.

On July 29, 2019, a U.S Secret Service (USSS) Investigative Analyst performed a database query on the 31 total re-encoded cards that were found in Crespo-Ruiz's possession. The re-encoded cards contained credit card account information from account holders of USAA, Citibank, Chase Bank, Bank of America and other institutions.  One of these cards (the one actually used to make the fuel transactions) was a BP Rewards Gift Card embossed with an account number ending in 6131 but re-encoded with the credit card account information of an individual with the initials C.C. (account ending in 0325).  None of these accounts belonged to Crespo-Ruiz.

As all these financial institutions are headquartered in U.S. states other than Florida (USAA, for example, is headquartered in Texas; Citibank and Chase are headquartered in New York) and do extensive business throughout the continental U.S. as well as many other countries, the fraudulent fuel transactions have affected both interstate and foreign commerce.

Defendant's Initials  _YCR_                    20